No. 17-1005

==================================================

**In the**

# United States Court of Appeals

**for the Sixth Circuit**

---

HUGH MACEACHERN,

*Plaintiff-Appellant*

v.

QUICKEN LOANS INC. AND TITLE SOURCE, INC.,

*Defendants-Appellees*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN (DISTRICT COURT NO. 2:15-CV-12448)

---

## APPEAL BRIEF OF DEFENDANTS-APPELLEES QUICKEN LOANS INC. AND TITLE SOURCE, INC.

---

Tara E. Mahoney (P68697)
Kimberly A. Yourchock (P72336)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7442
tmahoney@honigman.com

*Counsel for Defendants-Appellees*

# DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

Pursuant to 6 Cir. R. 26.1, Defendants-Appellees Quicken Loans Inc. and Title Source, Inc. make the following disclosures:

1. Neither Quicken Loans Inc. nor Title Source, Inc., is a subsidiary or affiliate of another publicly owned corporation.

2. There are no publicly owned corporations, not parties to this appeal, that have a financial interest in the outcome.

By: ____*/s/ Kimberly A. Yourchock* _
Tara E. Mahoney (P68697)
Kimberly A. Yourchock (P72336)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Appellees
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7442
kyourchock@honigman.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

STATEMENT OF JURISDICTION ........ vii

STATEMENT OF THE ISSUES ........ ix

STATEMENT OF THE CASE ........ 1

A. Counter-Statement of Facts ........ 1

1. *Quicken Loans' and Title Source's Business* ........ 1

2. *Quicken Loans Hires MacEachern, a Caucasian Male, at Age 59* ........ 1

3. *Members of MacEachern's Team Are Assigned to Assist Other Teams* ........ 3

4. *Title Source Hires MacEachern, a Caucasian Male, at Age 59* ........ 3

5. *MacEachern Is Reassigned After Title Source Learns That He Is in a Personal Relationship with the TCL Team Leader* ........ 4

6. *MacEachern Makes an Internal Complaint to Human Resources* ........ 5

7. *Title Source Learns MacEachern Has Sent Confidential Internal and Client Information to His Personal E-mail Account* ........ 7

8. *Title Source Discharges MacEachern Based on His Misconduct* ........ 8

9. *MacEachern Belatedly Claims He Worked Unpaid Overtime* ........ 9

B. Procedural History Relevant to this Appeal ........ 11

1. *MacEachern's Complaint* ........ 11

2. *MacEachern's Motion to Compel Discovery and the Protective Order* ........ 11

3. *The Companies' Motion for Summary Judgment* ........ 13

4. *The Trial Court's Grant of Summary Judgment to the Companies* ....................15

SUMMARY OF THE ARGUMENT ....................17

ARGUMENT ....................20

I. The Trial Court Properly Granted Summary Judgment as to MacEachern's Discrimination, Retaliation, and FLSA Claims ....................20

A. Standard of Review on Grants of Summary Judgment ....................20

B. MacEachern Failed to Present Prima Facie Cases of Age, Gender, or Race Discrimination and Summary Judgment Was Warranted....................21

C. The Trial Court Did Not Err in Granting Summary Judgment on MacEachern's Retaliation Claims ....................23

D. MacEachern Failed to Establish Pretext as to His Discrimination or Retaliation Claims ....................25

E. The Trial Court Also Properly Granted Summary Judgment as to MacEachern's FLSA Claims....................27

II. MacEachern's Miscellaneous Challenges to the Trial Court's Discovery Orders Do Not Merit Reversal or Any Other Grant of Relief....................29

A. Standard of Review....................29

B. MacEachern's Arguments Fail to Show Any Abuse of Discretion ....................29

1. *The Motion to Compel* ....................29

2. *The Protective Order* ....................31

3. *Production of the Electronic Calendar*....................31

4. *MacEachern's Deposition Transcript* ....................32

CONCLUSION....................32

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bender v. Hecht's Dep't Stores*,
455 F.3d 612 (6th Cir. 2006) ....................24

*Flagg ex rel. Bond v. City of Detroit*,
268 F.R.D. 279 (E.D. Mich. 2010) ....................31

*Briggs v. Potter*,
463 F.3d 507 (6th Cir. 2006) ....................21

*Brooks v. Am. Broad. Cos., Inc.*,
999 F.2d 167 (6th Cir. 1993) ....................20

*Ciminillo v. Streicher*,
434 F.3d 461 (6th Cir. 2006) ....................20

*Crockett v Ford Motor Co.*,
No. 12-CV-13869, 2015 WL 5785799 (E.D. Mich. Oct. 5, 2015) ....................26

*First Tech. Safety Sys. v. Depinet*,
11 F.3d 641 (6th Cir. 1993) ....................28

*Jackson v. VHS Detroit Receiving Hosp.*,
814 F.3d 769 (6th Cir. 2016) ....................21

*Jourdan v. Jabe*,
951 F.2d 108 (6th Cir. 1991) ....................29

*Kuhn v. Washtenaw County*,
709 F.3d 612 (6th Cir. 2013) ....................21, 23

*Laster v. City of Kalamazoo*,
746 F.3d 714 (6th Cir. 2014) ....................21

*Lindsay v. Yates*,
578 F.3d 407 (6th Cir. 2009) ....................20

*Mayer v. Ordman*,
391 F.2d 889 (6th Cir. 1968) ....................6

*McLean v. 988011 Ontario, Ltd.*,
224 F.3d 797 (6th Cir. 2000) ....................................................................20

*Richardson v. Wal–Mart Stores, Inc.*,
836 F.3d 698 (6th Cir. 2016) ....................................................25, 26, 27

*Scottsdale Ins. Co. v. Flowers*,
513 F.3d 546 (6th Cir. 2008) ....................................................................24

*Spring v. Sealed Air Corp.*,
483 Fed. Appx. 765 (3d Cir. 2012)...........................................................26

*Tran v. Kemper Ins. Cos.*,
55 Fed.Appx. 343 (6th Cir. 2003).............................................................28

*Ventura v. Cincinnati Enquirer*,
396 F.3d 784 (6th Cir. 2005) ....................................................................28

*Wasek v. Arrow Energy Servs., Inc.*,
682 F.3d 463 (6th Cir. 2012) ....................................................................23

*White v. Baptist Memorial Health Care Corp.*,
699 F.3d 869 (6th Cir. 2012) ....................................................................27

*Wierengo v. Akal Sec., Inc.*,
580 Fed.Appx. 364 (6th Cir. 2014)............................................................30

*Yazdian v. ConMed Endoscopic Techs., Inc.*,
793 F.3d 634 (6th Cir. 2015) ....................................................................20

**STATUTES**

29 U.S.C. §§ 153-158.....................................................................................6

Age Discrimination in Employment Act ....................................................11

Title VII, Civil Rights Act of 1964...............................................................11

Fair Labor Standards Act ..................................................................*passim*

Elliott-Larsen Civil Rights Act ....................................................................11

**MISCELLANEOUS**

Fed. R. Civ. P. 30 .......................................................................................31, 32

Fed. R. Civ. P. 37 .......................................................................................12, 29

Local Rule 7.1(a).........................................................................................12, 29

# STATEMENT OF JURISDICTION

1. On July 9, 2015, Appellant/Plaintiff Hugh MacEachern ("MacEachern") filed his complaint alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Fair Labor Standards Act ("FLSA"), and Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA") against Appellees/Defendants Quicken Loans Inc. ("Quicken Loans") and Title Source, Inc. ("Title Source") (collectively, "the Companies"). (RE 1, Complaint). The matter was assigned to Judge Steeh of the United States District Court for the Eastern District of Michigan ("Trial Court").

2. The Trial Court possessed federal question jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-1, *et seq.*, 29 U.S.C. § 623, and 29 U.S.C. § 201, *et seq.*

3. On September 21, 2016, the Trial Court granted the Companies' summary judgment motion, dismissing all of MacEachern's claims under both federal and Michigan law. (RE 77, Summary Judgment Order). On November 30, 2016, the Trial Court denied MacEachern's motion to alter or amend the grant of summary judgment. (RE 82).

4. On January 3, 2017 MacEachern filed a notice of appeal, which has been accepted as timely. (RE 84, Notice of Appeal). MacEachern's appeal addresses both the Summary Judgment Order (and denial of his request for reconsideration of that decision) and interlocutory rulings by the Trial Court concerning discovery.

5. This Court has jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

I. Whether the Trial Court correctly granted the Companies' Motion for Summary Judgment as to MacEachern's claims of gender, race and age discrimination under Michigan and federal law, when MacEachern presented no record evidence of more favorable treatment for similarly situated non-white, younger or female employees?

MacEachern answers: No

The Companies answer: Yes

This Court should answer: Yes

II. Whether the Trial Court correctly granted the Companies' Motion for Summary Judgment as to MacEachern's claims of retaliation under Michigan and federal law, when MacEachern presented no evidence of a causal link between his alleged protected activity and his discharge other than temporal proximity, and discovery of his misconduct occurred between the protected activity and discharge?

MacEachern answers: No

The Companies answer: Yes

This Court should answer: Yes

III. Whether the Trial Court correctly granted the Companies' Motion for Summary Judgment as to MacEachern's claims of discrimination and retaliation under Michigan and federal law, where MacEachern's employer, Title Source, presented evidence that he was discharged due to legitimate, non-discriminatory, non-retaliatory business reasons; namely, his repeated violations of company policies on protecting client information and data security by transmitting e-mails containing client information to a personal e-mail account—activity to which MacEachern admitted?

MacEachern answers: No

The Companies answer: Yes

This Court should answer: Yes

IV. Whether the Trial Court correctly granted the Companies' Motion for Summary Judgment as to MacEachern's claim for unpaid overtime under the federal Fair Labor Standards Act, where MacEachern did not produce or identify any testimony or record evidence establishing he had worked overtime hours for which he was not compensated at an overtime rate of pay, and offered no record evidence or testimony establishing that his employer, Title Source, failed to keep accurate records of overtime hours worked?

MacEachern answers: No

The Companies answer: Yes

This Court should answer: Yes

V. Whether the Trial Court abused its discretion by denying MacEachern's Motion to Compel Discovery, entering a protective order for confidential documents produced by the parties, and denying MacEachern's request to strike his deposition transcript, where MacEachern refused to identify specific deficiencies in the Companies' responses and productions of documents that entitled him to additional discovery despite the Companies' written objections, MacEachern refused to stipulate to or otherwise negotiate a similar protective order without judicial intervention, and MacEachern was not denied a copy of his transcript, but simply failed to request one?

MacEachern answers: Yes

The Companies answer: No

This Court should answer: No

VI. Whether the Trial Court abused its discretion by holding that MacEachern's calendar was not privileged in its entirety under the attorney-client privilege or work-product doctrine, where MacEachern had testified that he relied on the calendar's contents to support his claims of unpaid overtime, discrimination and retaliation, and intended to use the calendar's contents as part of the evidence for his claims at a future trial?

MacEachern answers: Yes

The Companies answer: No

This Court should answer: No

## STATEMENT OF THE CASE

### A. Counter-Statement of Facts

#### *1. Quicken Loans' and Title Source's Business*

Quicken Loans and Title Source are engaged in the financial services business and title and escrow services business, respectively. (RE 49-2, Page ID # 652, Summary Judgment Motion ("S.J. Mot.") Ex. 1, Jennifer Conte Decl., ¶ 4). Quicken Loans is the nation's largest online home lender and second largest retail lender. (*Id.*). Title Source provides title insurance, property valuations and settlement services to many large residential mortgage lenders, including Quicken Loans. (*Id.*). The work performed at both companies routinely requires the receipt, compilation, analysis and internal distribution of sensitive financial data and confidential personal information pertaining to clients and prospective clients.[1] (*Id.*, ¶ 5, Page ID # 652-653). The protection of this information from unauthorized distribution or use is essential to each business and is legally required. (*Id.*).

#### *2. Quicken Loans Hires MacEachern, a Caucasian Male, at Age 59*

On July 22, 2013, Quicken Loans hired Hugh MacEachern ("MacEachern"), a 59-year old Caucasian male. (RE 49-3, Page ID # 704, S.J. Mot. Ex. 2, Yasmeen Jasey Decl., ¶ 3; RE 49-5, Page ID # 801, S.J. Mot. Ex. 3, Plaintiff's Deposition,

---

[1] Quicken Loans' and Title Source's "clients" are loan applicants, most of whom are average Americans seeking home mortgages. (RE 49-2, Page ID # 652, Conte Decl., ¶ 4).

Part 1 ("Pl. Dep. 1")). Throughout his employment, MacEachern was entrusted with access to confidential and proprietary data. (RE 49-2, Page ID # 653, 659, Conte Decl., ¶¶ 8, 31). At numerous times during his employment, MacEachern received training on maintaining data security, including protecting sensitive internal and client information. (RE 49-3, Page ID # 705, Jasey Decl., ¶¶ 6-7; RE 49-5, Page ID # 802-803, 836, Pl. Dep. 1). In particular, MacEachern was advised not to send sensitive information (such as client names, financial data, and asset and credit information) to outside or personal e-mail accounts. (RE 49-3, Page ID # 705, Jasey Decl., ¶¶ 6-7).

MacEachern was initially an analyst on Quicken Loans' Associate Title Clearance ("ATC") team and supervised by team leader Yolanda Tatum, Associate Vice President of Title Clearance Jennifer Conte, and Vice President of Title Clearance Dan Studeny. (RE 49-2, Page ID # 653-654, Conte Decl., ¶¶ 8-9; RE 49-5, Page ID # 799-800, Pl. Dep. 1). In this role, MacEachern's responsibilities included reviewing abstract and title documents, performing title searches and resolving title problems. (RE 49-2, Page ID # 653, Conte Decl., ¶ 8). His work involved reviewing clients' financial and personal data, including loan numbers, liens, judgments, debts, and details of sensitive topics, such as estate administration, bankruptcies, and divorces. (*Id.*, ¶ 8, 31, Page ID # 653, 659; RE 49-5, Page ID # 814-816, Pl. Dep. 1).

### 3. *Members of MacEachern's Team Are Assigned to Assist Other Teams*

In the summer of 2013, the ATC team's workload decreased significantly. (RE 49-2, Page ID # 654, Conte Decl., ¶ 10). As a result, Quicken Loans began assigning (or "flexing out") ATC team members of all races, genders, and ages, to assist other teams. (*Id.*; RE 49-3, Page ID # 706, Jasey Decl., ¶¶ 10-11). In early December 2013, MacEachern was assigned to work as a Title Clearance Liaison ("TCL") as part of the TCL team. (RE 49-2, Page ID # 654, Conte Decl., ¶ 12; RE 49-5, Page ID # 800, Pl. Dep. 1). The role of a TCL is to contact third parties to obtain information for clearing title issues. (RE 49-2, Page ID # 654-655, Conte Decl., ¶ 12). MacEachern's age, race and gender played no role in his assignment. (*Id.*). Three other ATC team members (a younger African American male and two younger Caucasian females) were also transitioned to the TCL team. (*Id.*, ¶ 13, Page ID # 655; RE 49-3, Page ID # 706, Jasey Decl., ¶ 9). While assisting the TCL team, MacEachern received the same pay and bonuses. (RE 49-3, Page ID # 704, Jasey Decl., ¶ 4). Tatum remained MacEachern's team leader, but he also began indirectly reporting to the TCL team leader, Kim Cislo. (RE 49-5, Page ID # 800, Pl. Dep. 1).

### 4. *Title Source Hires MacEachern, a Caucasian Male, at Age 59*

In late December 2013, MacEachern began working for Title Source. (RE 49-3, Page ID # 706, Jasey Decl., ¶ 12). His job duties, title, pay, and reporting relationship remained the same. (*Id.*, ¶ 4, Page ID # 704; RE 49-2, Page ID # 655,

Conte Decl., ¶ 15). In January 2014, the ATC team was dissolved and MacEachern began exploring his options for a position outside the TCL team. (RE 49-2, Page ID # 655, Conte Decl., ¶¶ 16-17). MacEachern discussed his desire for advancement with Studeny and Conte. (*Id.*, ¶ 25, Page ID # 657). On March 7, 2014, Conte and Studeny offered MacEachern a newly created report analyst position, which offered additional responsibility and opportunity for advancement within the company. (*Id.*; RE 49-7, Page ID # 873-874, S.J. Mot. Ex. 5, E-mail Chain). MacEachern declined the promotion. (RE 49-2, Page ID # 658, Conte Decl., ¶ 26).

*5. MacEachern Is Reassigned After Title Source Learns That He Is in a Personal Relationship with the TCL Team Leader*

After MacEachern turned down the report analyst position, Title Source transferred MacEachern from the TCL team to the full Title Clearance ("TC") team as an analyst. (*Id.*, ¶ 28, Page ID # 658). This was done because MacEachern revealed that he was dating the TCL team leader, Cislo. (*Id.*, ¶¶ 27-29, Page ID # 658; RE 49-5, Page ID # 843-844, Pl. Dep. 1). The existence of a dating relationship between a team member (MacEachern) and a team leader (Cislo) to whom he reported created an improper conflict of interest. (RE 49-2, Page ID # 658, Conte Decl., ¶ 27). As a TC team member, MacEachern no longer worked with Cislo. (*Id.*, ¶ 30, Page ID # 658). Instead, he resumed reporting full time to team leader Yolanda Tatum. (*Id.*). Team captain Kasey Lopez also oversaw his work. (*Id.*).

As a TC analyst, MacEachern was responsible for evaluating and resolving title issues on title commitments or title searches. (*Id.*, ¶ 31, Page ID # 659). Once again, MacEachern's duties gave him ongoing access to proprietary internal data as well as clients' private information. (*Id.*; RE 49-5, Page ID # 814-816, Pl. Dep. 1).

As the TC role was more challenging than MacEachern's previous roles, Conte, Tatum and Lopez worked to integrate MacEachern to his new position. (RE 49-2, Page ID # 659, Conte Decl., ¶ 32). MacEachern, however, apparently interpreted these efforts as "harassment," alleging that after his transfer to the TC team, "[his] workload immediately increased." (RE 1, Page ID # 20, Complaint; RE 49-9, Page ID # 914, S.J. Mot. Ex. 7, Plaintiff's Deposition Part 2 ("Pl. Dep. 2")).

*6. MacEachern Makes an Internal Complaint to Human Resources*

Apparently angry because he was told he could no longer work for Cislo, on March 17, 2014, MacEachern delivered a written complaint to Jennifer Conte and Human Resources Team Relations Specialist Diane Sakowski. (RE 49-2, Page ID # 660, Conte Decl., ¶ 36; RE 49-5, Page ID # 841, Pl. Dep. 1; RE 49-10, Page ID # 920, S.J. Mot. Ex. 8, Diane Sakowski Decl., ¶ 5; RE 49-11, Page ID # 1073, S.J. Mot. Ex. 9, Internal Complaint). This complaint alleged that MacEachern had been subjected to harassment based on his age, race and gender, and that he had been retaliated against for his relationship with Cislo. (*Id.*).

On March 20, 2014, Sakowski met with MacEachern for over an hour to discuss his concerns. (RE 49-10, Page ID # 921, Sakowski Decl., ¶ 8; RE 49-13, Page ID # 1083-1087, S.J. Mot. Ex. 11, HR Investigation Notes). During that meeting, MacEachern claimed: (1) that the "flexing out" of MacEachern and two other "older white males" from the ATC team to other teams constituted age, race, and gender discrimination; and (2) that his transfer to the TC team was retaliation for his relationship with Cislo or retaliation for his turning down the report analyst position.[2] (RE 49-10, Page ID # 921, Sakowski Decl., ¶ 8; RE 49-9, Page ID # 902-903, 907-912, 915, Pl. Dep. 2; RE 49-17, Page ID # 1101, S.J. Mot. Ex. 15, Handwritten Notes).

After their meeting, Sakowski continued to investigate MacEachern's concerns, including by reviewing additional documents and speaking again with Conte. (RE 49-10, Page ID # 921, Sakowski Decl., ¶ 9). Ultimately, Sakowski could not substantiate MacEachern's allegations. (*Id.*, ¶ 10, Page ID # 921-922). She found:

- Team members of all races, ages, and genders were flexed away from the ATC team and MacEachern was not transferred based on his age, race, or gender.

[2] MacEachern also told Sakowski that he had been in contact with a union and later claimed he was terminated in retaliation for this "union activity." Any claim that his discharge was motivated by purported discussions of union activity is within the exclusive jurisdiction of the National Labor Relations Board. *See* 29 U.S.C. §§ 153(d), 157, 158; *Mayer v. Ordman*, 391 F.2d 889, 891 (6th Cir. 1968).

- MacEachern's transfer to the TC team was an appropriate action to remedy the conflict of interest created by MacEachern's relationship with Kim Cislo.
- MacEachern was held to the same standards as the other TC team members.

(RE 49-10, Page ID # 921-922, Sakowski Decl., ¶ 10; RE 49-18, Page ID # 1103-1104, S.J. Mot. Ex. 16, Summary Report).

*7. Title Source Learns MacEachern Has Sent Confidential Internal and Client Information to His Personal E-mail Account*

On March 20, 2014, MacEachern's team captain Kasey Lopez sent him a list of confidential client names and loan numbers, representing loan files that he had been assigned to work on that day. (RE 49-5, Page ID # 837-838, Pl. Dep. 1; RE 49-19, Page ID # 1106, S.J. Mot. Ex. 17, E-mail Chain). A few minutes later, MacEachern responded to Lopez's e-mail, copying Tatum on his response and asking several questions. (RE 49-19, Page ID # 1106, E-mail Chain). MacEachern also copied the e-mail address h.maceachern1@gmail.com (a personal account) on his response. (*Id.*; RE 49-5, Page ID # 809, 812, Pl. Dep. 1). By doing so, he sent not only his response, but also Lopez's original e-mail, which contained confidential client names and loan numbers, to his personal Gmail account. (RE 49-19). Lopez brought the e-mail to Conte's attention. (RE 49-2, Page ID # 660, Conte Decl., ¶ 34). Conte immediately notified TRS Diane Sakowski because this action triggered obvious data confidentiality concerns. (*Id.*).

In order to better understand what else MacEachern had done in open disregard of obvious data privacy concerns, Title Source then reviewed MacEachern's work e-mail account. (RE 49-10, Page ID # 922-923, Sakowski Decl., ¶¶ 12-15). That review revealed that beginning in July 2013, MacEachern sent more than 900 e-mails to e-mail addresses outside of Title Source or Quicken Loans, more than 100 of which contained confidential information and private client information. (*Id.*, ¶ 15, Page ID # 922-923; RE 49-20, Page ID # 1109-1128, S.J. Mot. Ex. 18, E-mail List). This information had been sent not only to MacEachern's personal e-mail address but also to other addresses. (*Id.*). The types of information MacEachern sent included client names and loan numbers, discussions of personal client information, lien and judgment amounts, details of clients' divorce proceedings, bankruptcies and estate administration. (RE 49-10, Page ID # 923, Sakowski Decl., ¶ 16; RE 49-21, Page ID # 1130-1178, S.J. Mot. Ex. 19, Sample E-mails). Also diverted were materials concerning company metrics, forecasts and other data clearly not meant for external distribution. (RE 49-10, Page ID # 923, Sakowski Decl., ¶ 17; RE 49-22, Page ID # 1180-1197, S.J. Mot. Ex. 20, Sample E-mails).

*8. Title Source Discharges MacEachern Based on His Misconduct*

On Monday March 24, 2014, Sakowski met with MacEachern to inform him of the outcome of her investigation into his complaint. (RE 49-10, Page ID # 923 Sakowski Decl., ¶¶ 18-19). Sakowski also used this meeting as an opportunity to

question MacEachern about his disregard of data privacy concerns. (*Id.*, ¶ 18, Page ID # 923). During that meeting, MacEachern admitted that he had forwarded company e-mails to his personal e-mail accounts, and admitted no one had given him permission to do so. (*Id.*, ¶ 21, Page ID # 924). Despite his training on the requirement that he not transmit confidential company information to outside e-mail accounts, MacEachern claimed to be unaware of any such prohibition and saw nothing wrong with sending e-mails containing client names, loan numbers, sensitive client information, and confidential documents to his personal accounts. (*Id.*). At the end of that meeting Sakowski advised MacEachern that he was being suspended, with pay, while her investigation continued. (*Id.*, ¶ 24, Page ID # 925).

Sakowski's investigation ultimately concluded that MacEachern had deliberately sent confidential information to his personal e-mail account and outside of the company on numerous occasions. (*Id.*, ¶ 26, Page ID # 925). As a result, the decision was made to terminate MacEachern's employment. (*Id.*). Sakowski notified MacEachern of his termination on March 26, 2014 by telephone, and Title Source sent MacEachern a termination letter. (RE 49-23, Page ID # 1199, S.J. Mot. Ex. 21, Termination Letter; RE 49-5, Page ID # 839, Pl. Dep. 1).

*9. MacEachern Belatedly Claims He Worked Unpaid Overtime*

On March 25, 2014, the day *after* he was suspended pending further investigation into his dissemination of sensitive client and business information,

MacEachern e-mailed Sakowski to ask about his final paycheck. (RE 49-10, Page ID # 926, Sakowski Decl., ¶ 27; RE 49-24, Page ID # 1208, S.J. Mot. Ex. 22, March 25, 2014 E-mail Chain). In that e-mail, MacEachern alleged for the first time that he had worked hours which he had not recorded. (*Id.*). This behavior, if true, violated policies requiring accurate timekeeping and prohibiting hourly employees from working "off the clock." (RE 49-2, Page ID # 657, Conte Decl., ¶ 23; RE 49-3, Page ID # 705, Jasey Decl., ¶ 7). MacEachern was aware of these policies, which were in effect throughout his entire employment by Title Source. (RE 49-3, Page ID # 705, Jasey Decl., ¶ 7).

Title Source promptly responded and asked MacEachern to provide details of the unrecorded hours he claimed to have worked. (RE 49-24, Page ID # 1208). Months later, MacEachern alleged that he had worked on average 12 more hours of overtime a week, every week since July 2013, that he did not record and for which he was not paid. (RE 49-9, Page ID # 886-887, Pl. Dep. 2; RE 49-25, Page ID # 1211, S.J. Mot. Ex. 23, September 22, 2014 E-mail). MacEachern admits, however, that he never reported these hours to anyone in management before his termination. (RE 49-5, Page ID # 806-807, Pl. Dep. 1; RE 49-9, Page ID # 888-889, Pl. Dep. 2).[3] He also admits that no one directed him to work "off the clock." (RE 49-5, Page ID

[3] MacEachern claimed at his deposition to have reported it to his former girlfriend Kim Cislo while they were dating but could not identify when he made that report or what he allegedly told her. (RE 49-5, Page ID # 804-805, 808, Pl. Dep. 1).

# 807, Pl. Dep. 1). He further admits that when he did report overtime hours, he was paid for those hours—a fact which is supported by his payroll records. (RE 49-3, Page ID # 704, Jasey Decl., ¶ 4; (RE 49-9, Page ID # 889-891, Pl. Dep. 2).

## B. Procedural History Relevant to this Appeal

### 1. *MacEachern's Complaint*

On July 9, 2015, MacEachern initiated this lawsuit, which asserts claims for age discrimination, reverse race discrimination, reverse gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA") and for unpaid overtime under the Fair Labor Standards Act ("FLSA"). (RE 1, Complaint; RE 49-5, Page ID # 794-799, Pl. Dep. 1).

### 2. *MacEachern's Motion to Compel Discovery and the Protective Order*

On December 14, 2015, MacEachern filed a Motion to Compel Discovery and for Sanctions ("MacEachern's Discovery Motion") in which he requested that the Companies be ordered to respond, without objections, to all interrogatories he propounded, to produce all documents requested in his requests for production, and for unspecified monetary sanctions. (RE 38, Page ID # 306-317, 312-314). The Companies had responded to each of MacEachern's discovery requests, and those responses included objections based on multiple grounds, including lack of relevance and overbreadth as to time period and subject matter. (RE 43-3). The Trial

Court referred the dispute to Magistrate Judge Davis (the "Magistrate Judge"). The Companies responded to the motion on December 31, 2015. (RE 43, Page ID # 441-451). In that response, the Companies argued that MacEachern's motion should be denied because: (1) MacEachern refused to discuss the discovery dispute before filing his motion, and (2) MacEachern had not specified, before filing his motion or in his motion, why the discovery already produced to him was deficient. (*Id.*, Page ID # 446-447).

On May 26, 2016, the Magistrate Judge issued an order denying MacEachern's Discovery Motion. Specifically, the Magistrate Judge held that the motion did not comply with Fed. R. Civ. P. 37(a)(1) and Local Rule 7.1(a) because MacEachern failed to specify the particular documents he sought or which requests were not properly answered, and failed to appropriately meet and confer with the Companies' counsel before filing his motion. (RE 57, Page ID # 1402-1404). The Magistrate Judge also held that a protective order previously requested by the Companies should be entered. (*Id.*, Page ID # 1404). The Magistrate Judge concluded that entering the order would expedite discovery and provided the same degree of protection to all parties' documents. (*Id.*). Following entry of the

protective order, the Companies supplemented their production to MacEachern with more than 900 pages of additional discovery.[4]

MacEachern filed objections to the Magistrate Judge's decision on June 16, 2016. In his objections, MacEachern also claimed for the first time that he had been improperly denied a copy of his deposition transcript. (RE 63, Page ID # 1581-1582). The Trial Court overruled all of MacEachern's objections and affirmed the Magistrate Judge's findings. (RE 68, Page ID # 1681-1682). The Trial Court also noted that MacEachern had been served with all relevant transcript excerpts. (*Id.*).[5]

*3. The Companies' Motion for Summary Judgment*

On January 29, 2016, the Companies moved to dismiss all of MacEachern's claims on summary judgment. (RE 49). Specifically, the Companies sought

---

[4] The Trial Court noted this supplemental production in its order overruling MacEachern's objections to the Protective Order and denial of his motion. (RE 68, Page ID # 1681).

[5] On December 18, 2015, the Companies filed a Motion to Compel Discovery (the "Companies' Discovery Motion") in which they asked the Trial Court, among other things, to compel MacEachern to produce a copy of an electronic calendar he had described at his deposition as follows: "I have everything on there about everything that happened. I keep a daily log of everything that happened to me that day." (RE 40, Page ID # 319-322, 332). MacEachern opposed the motion, asserting that the calendar entries were attorney-client privileged or constituted work product. (RE 51, Page ID # 1250-1252). On May 27, 2016, the Magistrate Judge issued an order granting in part the Companies' Discovery Motion, and held that the calendar was not privileged in its entirety and that at least portions of it should be produced as relevant records. (RE 58, Page ID # 1410). The Trial Court affirmed the Magistrate Judge's decision. (RE 68). The calendar was never used as an exhibit in any filing, however, including the Motion for Summary Judgment.

summary judgment on MacEachern's discrimination and retaliation claims, arguing that MacEachern: (1) failed to present prima facie cases of discrimination because he failed to present any evidence that a similarly situated employee was treated more favorably; (2) failed to show causation as to his retaliation claims because he relied solely on temporal proximity, and the discovery of his misconduct was an intervening cause of his discharge; and (3) failed to show that the stated reason for his discharge was pretextual, because he admitted to sending the e-mails outside the company. (*Id.*, Page ID # 636-645). The Companies sought summary judgment on MacEachern's FLSA claim because MacEachern offered no proof that he worked unpaid overtime hours or that the Companies should have known he was working unreported hours. (*Id.*, Page ID # 645-646).

MacEachern responded to the Companies' motion with four arguments. First, he contended that he satisfied a prima facie case of retaliation solely on the grounds that his suspension and discharge were close in time to his complaint to Sakowski. (RE 69, Page ID # 1708-1709, S.J. Opp. Br.). Second, he claimed that he could show a prima facie case of discrimination with evidence, to be collected in the future, of other instances where older white male employees were "flexed out." (*Id.*, Page ID # 1710). Third, MacEachern claimed that the Companies' stated reason for his discharge – his admitted transmission of company e-mails containing confidential client and sensitive business information to a personal e-mail account – was a

pretext, because under MacEachern's interpretation of Title Source's policies, he had not sent "confidential information." (*Id.*, Page ID # 1712-1713). MacEachern also contended that, because in unrelated proceedings before the National Labor Relations Board an Administrative Law Judge had found one of Title Source's confidentiality policies overbroad, the data security policies were invalid and, thus, could not provide a basis for his termination. (*Id.*, Page ID # 1713). Fourth, as to his FLSA claim, MacEachern argued that his own estimates of unpaid time were sufficient, and could be proven by an exhaustive review of surveillance footage. (*Id.*, Page ID # 1713-1715).

### *4. The Trial Court's Grant of Summary Judgment to the Companies*

On September 21, 2016, the Trial Court granted the Companies' motion for summary judgment in its entirety. (RE 77, Summary Judgment Order). The Trial Court found that MacEachern failed to present any direct or circumstantial evidence of discriminatory animus based on MacEachern's age, race or gender. (*Id.*, Page ID # 2545-2546). The Trial Court rejected MacEachern's claim that Yolanda Tatum engaged in the same conduct as he had and yet received favorable treatment; noting that Tatum's single transmission of an e-mail to MacEachern's personal account after hitting "reply all" to an e-mail on which MacEachern had first improperly copied his personal account was distinguishable from MacEachern's intentional

transmission of hundreds of documents, many of which contained sensitive client and business information, to his personal account. (*Id.*, Page ID # 2539-2540).

The Trial Court next rejected MacEachern's retaliation claims. The Trial Court held that any potential inference of causation based on the temporal proximity between the date of his complaint to Sakowski and the timing of his discharge was dispelled by the intervening discovery of MacEachern's improper e-mail transmissions, which constituted an independent, lawful basis for his termination. (*Id.*, Page ID # 2547-2548).

Further, as to all of MacEachern's discrimination and retaliation claims the Trial Court concluded MacEachern failed to show that the stated reason for his discharge was pretextual. Because MacEachern admitted sending the e-mails to outside, personal accounts, and because he had clearly been subject to policies prohibiting that conduct, he could not show that the Companies lacked an honest belief in the reason for his termination. (*Id.*, Page ID # 2540-2543).

Finally, the Trial Court granted summary judgment on the FLSA claim for unpaid overtime wages. The Trial Court rejected MacEachern's claims that he was entitled to overtime pay after failing to comply with a timekeeping policy and could base his claim on hypothetical surveillance footage: "[T]he employer is not required to act as a private detective to review video surveillance cameras and to employ other clandestine means such as interviewing plaintiff's co-workers . . . to document the

hours plaintiff worked." (*Id.*, Page ID # 2550). The Companies were not liable for hours MacEachern knowingly failed to report. (*Id.*, Page ID # 2550-2551).

MacEachern sought reconsideration of the Summary Judgment Order. The Trial Court denied MacEachern's motion on November 30, 2016. (RE 82).

## SUMMARY OF THE ARGUMENT

MacEachern's arguments on appeal should be rejected, and the Trial Court's orders affirmed, because the record is clear that MacEachern was suspended and then discharged for one entirely lawful reason: He repeatedly, intentionally, and admittedly transmitted internal and confidential information about the Companies and their clients to outside e-mail addresses. MacEachern has never presented any evidence as to any contested issue in this case to support his laundry list of claims against the Companies. Again and again in his filings before the Trial Court, MacEachern substituted vitriol for evidence, argument for testimony, and unsupported accusations for citations to the record. Perhaps unsurprisingly, his appeal before this Court is much the same. MacEachern's issues on appeal generally concern disputes about the Trial Court's grant of summary judgment as to his discrimination, retaliation, and FLSA claims and the Trial Court's discovery decisions. Not one of his arguments demonstrates reversible error.

First, the Trial Court properly concluded that MacEachern failed to establish a prima facie case of discrimination or retaliation. MacEachern failed to point to

any evidence that he was subjected to disparate treatment based on his age, gender, or race. By contrast, the Companies presented ample record evidence that each employment decision made relative to MacEachern was unrelated to any protected characteristic and that at no time was MacEachern treated less favorably than any other employee based on his age, gender, or race. Similarly, the Trial Court properly concluded that MacEachern failed to establish a prima facie case of retaliation. In support of his retaliation claims, the only "evidence" of causation MacEachern identified was the timing between his complaint and his termination. In response, however, the Companies presented unrebutted documentary evidence establishing that *after* MacEachern made that complaint the Companies discovered, as a result of MacEachern's own actions, that he had sent hundreds of internal and confidential documents to outside e-mail addresses. As the Trial Court correctly concluded, this discovery constituted an intervening event that dissolved any potential causal inference based on temporal proximity. Thus, the Trial Court properly concluded MacEachern failed to present a prima facie case of discrimination or retaliation.

The Trial Court also properly concluded that MacEachern failed to show pretext as to his discrimination or retaliation claims. MacEachern's claims could only survive summary judgment if he offered some basis, grounded in the record, to attack the Companies' good-faith belief that MacEachern had repeatedly violated Title Source's policies and should be discharged on that basis. MacEachern did not

and cannot offer such evidence. Instead, MacEachern attempts to reinterpret Title Source's policies and attempts to declare the policies void based on an irrelevant National Labor Relations Board ("NLRB") proceeding. Each of these arguments was properly rejected by the Trial Court and should be rejected by this Court as well.

Further, the Trial Court properly rejected MacEachern's flawed argument that he was entitled to a jury trial on his FLSA unpaid overtime claim solely because he claimed to work hours that he never reported. MacEachern made no showing that his employer was aware he was working "off the clock" or that he was ever permitted to do so. Again, in the face of MacEachern's conclusory, self-serving statements the Companies demonstrated through competent record evidence that MacEachern was paid for all hours worked that he reported pursuant to a clear, lawful timekeeping policy. MacEachern could not demonstrate any legal basis for his FLSA claim.

Finally, MacEachern takes issue with a number of the Trial Court's discovery rulings. Such rulings, however, may only be disturbed by this Court if the Trial Court abused its discretion, which it did not. Both the Magistrate Judge and the Trial Court judge closely examined all of the grievances MacEachern now raises and made well-reasoned decisions, grounded in settled law. The Companies produced hundreds of pages of documents and repeatedly attempted to informally resolve discovery disputes with MacEachern, to no avail. MacEachern failed to explain the shotgun discovery he sought or its relevance. Both the Trial Court judge and the

Magistrate Judge concluded that his refusal to meaningfully discuss any issue, even during motions practice, precluded the relief he claimed. Similarly, MacEachern can show no reversible error in an order requiring him to produce an unprivileged electronic calendar that was never cited during the summary judgment proceedings, or the entry of a protective order that had no impact on his access to discovery.

## ARGUMENT

### I. The Trial Court Properly Granted Summary Judgment as to MacEachern's Discrimination, Retaliation, and FLSA Claims

#### A. Standard of Review on Grants of Summary Judgment

A grant of summary judgment is reviewed de novo, and the non-movant is entitled to have reasonable inferences, based on record evidence, drawn in his favor. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644 (6th Cir. 2015). Ultimately, however, the non-moving party must present sufficient evidence based on which a jury could reasonably find in his favor. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). A non-moving party cannot withstand summary judgment by introduction of a "'mere scintilla' of evidence" in its favor. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A plaintiff may not rely on self-serving, unsupported testimony or his own conjecture to avoid summary judgment. *Lindsay v. Yates*, 578 F.3d 407, 421 (6th Cir. 2009); *Brooks v. Am. Broad. Cos., Inc.*, 999 F.2d 167, 172 (6th Cir. 1993). Where, as here, the non-moving party fails to meet this burden, judgment for the moving party is proper.

### B. MacEachern Failed to Present Prima Facie Cases of Age, Gender, or Race Discrimination and Summary Judgment Was Warranted

Each of MacEachern's discrimination claims, whether based on age, gender or race, is governed by the same standards of proof: To withstand summary judgment, MacEachern is obligated to present a prima facie case to shift the burden of production to the Companies. *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013). MacEachern failed to identify circumstantial evidence to support a prima facie case. As a result, summary judgment in favor of the Companies as to each of MacEachern's discrimination claims should be affirmed by the Court.

To present a prima facie case of discrimination, MacEachern must show: (1) he is a member of a protected class, (2) he was qualified for the job and performed adequately, (3) despite his qualifications and performance, he suffered an adverse employment action, and (4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class. *See, e.g.*, *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). In cases of alleged disparate discipline, a plaintiff must show that the similarly situated employee engaged in comparable misconduct but was punished less severely. *Jackson v. VHS Detroit Receiving Hosp.*, 814 F.3d 769, 777 (6th Cir. 2016). Further, because he alleged reverse gender and reverse race discrimination claims, MacEachern was obligated to show "background circumstances [that]

support the suspicion that [Title Source] is that unusual employer who discriminates against the majority." *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006).

The record before the Trial Court showed not a single instance where similarly situated co-workers were permitted to repeatedly, intentionally transmit Company data to outside e-mail accounts, and MacEachern's discrimination claims were properly dismissed on that basis alone. The unrebutted evidence from Title Source employees, including Sakowski and Conte, was that MacEachern received his assignments and transfer, and even a promotion opportunity, without regard to race, gender, or age. MacEachern's only arguments consist of (1) claiming Cislo received preferential treatment, because she was not disciplined, and (2) blatantly misrepresenting the record before the Trial Court regarding Tatum. (App. Br. pp. 22-23). Neither claim holds any water.

Neither MacEachern nor Cislo were disciplined for dating each other. MacEachern was moved to another department, to avoid a conflict of interest. Cislo was already managing her department and someone needed to be moved. That someone was MacEachern, who was new to Cislo's department. Critically, MacEachern made no showing to the Trial Court that Cislo ever engaged in the same

misconduct – intentionally and repeatedly sending sensitive data to outside e-mail accounts.[6]

MacEachern proceeds into outright misrepresentations to this Court in his second argument, regarding Tatum, by claiming that "of the alleged 988 e-mails sent by the plaintiff, the Company has only produced one" and claiming Tatum sent multiple e-mails outside of the company, without any supporting evidence in the record. (App. Br. 23). In fact, Title Source and Quicken Loans produced, and the Trial Court reviewed, dozens of e-mails containing company data that MacEachern sent to his personal e-mail account, including data on customers' divorces, mortgages, liens, and estate administration. (RE 49-21, Page ID # 1130-1178). MacEachern, in contrast, fails to cite to a single piece of record evidence that Tatum intentionally sent e-mails to an outside address. Summary judgment was warranted.

### C. The Trial Court Did Not Err in Granting Summary Judgment on MacEachern's Retaliation Claims

MacEachern presents no basis for reversing the Trial Court's dismissal of his retaliation claims, because he failed to establish a triable question of fact on causation. To present a prima facie case of retaliation using circumstantial evidence (as MacEachern must), a plaintiff must show not only that he engaged in protected

[6] To the extent MacEachern also contends that his transfer or discharge was some form of punishment or retaliation for dating Cislo, or for turning down a report analyst position, he plainly presents no claim for a jury because neither of those claims constitutes actionable retaliation or discrimination.

conduct but that relevant evidence shows a causal link between that conduct and his discharge. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012). Even when temporal proximity between protected activity and discharge would otherwise be enough to show causation, an intervening, independent justification for the discharge will dispel any causal inference. *Kuhn*, 709 F.3d at 628; *Wasek*, 682 F.3d at 472.

MacEachern does not directly address the Trial Court's holding that he failed to establish causation. Instead, he reiterates that his alleged protected activities on March 17, 2014 were close in time to his suspension on March 24 and discharge on March 26. The Trial Court's critical holding, however, was that discovery of MacEachern's misconduct, based on MacEachern's March 20 e-mail to his superiors copying his personal e-mail address, constitutes an intervening event that breaks the causal chain. (RE 77, Page ID # 2548). MacEachern does not address that portion of the Trial Court's opinion, and therefore presents no basis for reversal. Temporal proximity is not sufficient on these facts to withstand summary judgment.[7]

---

[7] MacEachern also appears to claim in his brief that the evidence of his improperly forwarding e-mails to his personal account nearly 1,000 times should be disregarded as "fruit of the poisonous tree," because it was only discovered after he complained about alleged discrimination. (App. Br. p. 16). This argument, in addition to being irrelevant, has been waived, because MacEachern never raised it to the Trial Court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

### D. MacEachern Failed to Establish Pretext as to His Discrimination or Retaliation Claims

Even if MacEachern had presented a prima facie case of discrimination or retaliation, summary judgment was still properly granted because he presented no evidence of pretext. MacEachern cannot withstand summary judgment, and is not entitled to reversal of the Trial Court's order, because he failed to present evidence from which a jury could reasonably conclude that the stated reason for his discharge was a pretext for discriminatory or retaliatory motive. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 625 (6th Cir. 2006). Further, under the "honest belief doctrine," MacEachern was required to show evidence that the Companies lacked a good-faith belief in the stated reason for his discharge. *Richardson v. Wal–Mart Stores, Inc.*, 836 F.3d 698, 706 (6th Cir. 2016) (even if supervisor's reliance on employee's disciplinary history was mistaken, supervisor possessed good-faith belief that employee's record merited discharge). Instead, MacEachern attacks the policies he admittedly violated and claims he was entitled to a more thorough workplace investigation. MacEachern has not, however, shown legal error, and Appellees presented an extensive record to the Trial Court supporting an honest belief in the bases for his discharge.

Although MacEachern now asserts that "of the alleged 988 e-mails sent by the plaintiff, the Company has only produced one" (App. Br. p. 23), that misrepresents the evidence Appellees presented to the Trial Court. By the summary

judgment stage of the proceedings MacEachern had *himself* produced, and authenticated, dozens of e-mails he sent to his personal account containing information about the Companies' customers, including divorce proceedings, estate disputes, and judgment liens. (RE 49-21, Page ID # 1130-1178). There is no question that the e-mails were sent. Further, as the Trial Court concluded, MacEachern had reviewed policies prohibiting such transmissions. (RE 49-3, Page ID # 705).[8]

Assuming *arguendo* MacEachern challenged successfully the Companies' conclusion that he repeatedly transmitted sensitive data outside of the company, he still failed to challenge the Companies' good-faith belief that he had done so.

---

[8] MacEachern repeatedly cites to an NLRB Administrative Law Judge's determination that a portion of Title Source's employee handbook used overbroad confidentiality terms. (App. Br. pp. 12, 19). That finding has no bearing on whether MacEachern's discharge for transmitting sensitive data outside the company is pretextual, as the Trial Court recognized. (RE 77, Page ID # 2542-2543). A challenge to whether a policy is valid under a different law does not render every decision made under that policy pretextual. *See Crockett v Ford Motor Co.*, No. 12-CV-13869, 2015 WL 5785799, at * 6 (E.D. Mich. Oct. 5, 2015) ("even if Defendants did terminate Crockett in violation of the FMLA, that would in no way support Crockett's claims of *racial* discrimination.") (emphasis in original); *Spring v. Sealed Air Corp.*, 483 Fed. Appx. 765, 769 (3d Cir. 2012) ("[W]hether the reporting policy violates [Pennsylvania state law] is irrelevant… [and does] not undermine Cryovac's nondiscriminatory reason for firing Spring, nor show that his taking FMLA leave was a motivating reason for his termination."). Moreover, the ALJ did not find overbroad any of the Companies' specific policies concerning protecting client loan information or internal company financial data from disclosure. (RE 69, Page ID # 1764, 1767, ALJ Opinion) MacEachern does not tie any policy held overbroad by the ALJ to the basis for his discharge, as set forth in his termination letter. (RE 49-23). His argument fails as to both the law and the facts.

MacEachern's lone argument on the "honest belief' doctrine is that Title Source did not make a sufficient effort to investigate his misconduct. (App. Br. pp. 18-19). In *Richardson*, however, this Court affirmed a grant of summary judgment where the only investigation that took place was a review of an employee's personnel file and disciplinary history. *Richardson*, 836 F.3d at 706-07. Moreover, MacEachern misrepresents the record. He claims that "[t]he Company, however, neither discussed any concerns they had with the plaintiff prior to his dismissal, nor offered him an opportunity to answer questions, let alone investigate his claims." (App. Br. p. 18). To the contrary, the unrebutted evidence showed the Companies expended more time investigating the bases for MacEachern's discharge than the employer did in *Richardson*. Sakowski interviewed MacEachern and specifically asked about his transmission of company data, and he admitted to sending the e-mails. (RE 49-10, Page ID # 924). The investigation revealed hundreds of intentional, improper transmissions of confidential data. The Companies easily demonstrated an honest belief in the reasons for MacEachern's discharge, and he presented no fact question as to pretext.

### E. The Trial Court Also Properly Granted Summary Judgment as to MacEachern's FLSA Claims

MacEachern's wholesale failure to produce record evidence supporting his case extends to his FLSA claims as well, and they were properly dismissed on summary judgment. Where an employer has a lawful policy requiring that hours be

documented, and the employer adheres to that policy, an employee who fails to record his or her work hours has no triable claim for overtime wages. *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 872 (6th Cir. 2012).

MacEachern's primary argument on appeal is that "if an employer does not maintain the required records, the employee is entitled to recover, based on good faith, a reasonable and realistic estimate of the time he or she worked." (App. Br. 25). MacEachern's argument fails because he never demonstrated any evidence to the Trial Court, in the first instance, that Title Source or Quicken Loans fail to keep accurate timekeeping records. To the contrary, explicit timekeeping policies governed MacEachern's employment, he made no report of unpaid hours until he was suspended, and he was paid for overtime he reported. (RE 49-3, Page ID # 705, Jasey Decl., ¶ 7). He is not entitled to any presumption that his claims are true.

Nor did MacEachern present any evidence that the Companies knew, or should have known, that he was allegedly working unrecorded hours. His sole argument to the Trial Court was that surveillance videos and other security records would establish when he was on the Companies' respective premises, and that other employees saw him working at night. (RE 69, Page ID # 1713-1715). He makes a similar argument to this Court. (App. Br. p. 25). MacEachern cites no authority that relieves him of the burden of complying with his employer's timekeeping policies, and the Trial Court properly rejected his arguments. (RE 77, Page ID # 2550-2551).

## II. MacEachern's Miscellaneous Challenges to the Trial Court's Discovery Orders Do Not Merit Reversal or Any Other Grant of Relief

### A. Standard of Review

A district court's discovery rulings are reviewed for an abuse of discretion. *Ventura v. Cincinnati Enquirer*, 396 F.3d 784, 789 (6th Cir. 2005). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Tech. Safety Sys. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993). A trial court does not abuse its discretion in denying a motion to compel where the movant refuses to participate in the meet and confer process. *See, e.g.*, *Tran v. Kemper Ins. Cos.*, 55 Fed.Appx. 343, 345 (6th Cir. 2003). A *pro se* plaintiff must adhere to the same basic procedural rules as any other litigant. *Jourdan v. Jabe*, 951 F.2d 108, 109-10 (6th Cir. 1991).

### B. MacEachern's Arguments Fail to Show Any Abuse of Discretion

#### *1. The Motion to Compel*

As MacEachern now characterizes it: "The District Court failed to act for plaintiff to obtain lawful discovery. . . . The defendants failed to provide the requested discovery. . . not a single one of the twenty-five Interrogatories were ever answered." (App. Br. p. 13). In fact, the Companies provided MacEachern with responses and objections to all of his discovery requests and produced hundreds of pages of documents. (RE 43, Page ID # 442-443, Opp. to Discovery Motion; RE 43-3). MacEachern claims that those responses were deficient. At the time, however,

he was given numerous opportunities to specify which responses he believed were deficient and what additional information he wanted. He flatly refused to participate in the process. (RE 38, Page ID # 311-314). As MacEachern stated: “[Y]our overall response to my lawful discovery submission was so lacking in substance that I am not going to go through each one and explain what it is I am seeking.” (RE 43, Page ID # 445). The Magistrate Judge held that such conduct violated Local Rule 7.1(a) and Fed. R. Civ. P. 37, and denied the motion. (RE 57, Page ID # 1401-1404). The Trial Court reviewed the Magistrate Judge’s decision and concluded similarly that MacEachern’s motion was improper. (RE 68, Page ID # 1679-1681).

It is not the Trial Court’s duty to sort through the record and justify a party’s discovery requests. *Wierengo v. Akal Sec., Inc.*, 580 Fed.Appx. 364, 375 (6th Cir. 2014). In fact, both the Magistrate Judge and the Trial Court gave MacEachern opportunity after opportunity to conduct discovery and litigate his case, many times far exceeding what would be ordinarily permitted for a litigant represented by counsel. (*See, e.g.*, RE 18, Page ID # 90-91 (MacEachern filed motion demanding special accommodations for producing documents and accusing the Companies’ employees and counsel of destroying evidence unless he personally supervised copying of all documents); RE 22, Page ID # 108-111 (MacEachern filed motion requesting extension to discovery schedule because he had voluntarily given documents away to third parties); RE 36, Page ID # 289-290 (MacEachern filed

motion requesting injunction preventing Companies from discussing case with their own employees). As noted by the Magistrate Judge, MacEachern's decision to represent himself did not give him an unlimited license to ignore the applicable rules. (RE 57, Page ID # 1401-1402).

*2. The Protective Order*

MacEachern's objection on appeal to the entry of a protective order is likewise groundless. MacEachern contends that Appellees should have filed a separate motion to enter a protective order, but does not specify how he was (or possibly could have been) prejudiced by a protective order that applied equally to all parties. (App. Br. 12-13). Moreover, a motion is not a prerequisite to a protective order's entry. *See Flagg ex rel. Bond v. City of Detroit*, 268 F.R.D. 279, 310 & n.9 (E.D. Mich. 2010) (noting that courts have the power to enter protective orders *sua sponte*).

*3. Production of the Electronic Calendar*

MacEachern fails to show any reversible error as to the production of his calendar following the Magistrate Judge's partial granting of the Companies' Discovery Motion. MacEachern contends that he was required to turn over privileged documents, but this misunderstands the Magistrate Judge's order. (App. Br. pp. 10-12). The Magistrate only precluded MacEachern from introducing evidence at trial that he claimed as privileged and withheld. (RE 58, Page ID # 1410).

Moreover, the calendar was not used as part of the record on which summary judgment was granted. Thus, MacEachern has not shown any error or prejudice.

*4. MacEachern's Deposition Transcript*

MacEachern similarly fails to present any legal error involving his claimed entitlement to a copy of his deposition transcript. MacEachern asserts that the Trial Court failed to enforce Fed. R. Civ. P. 30(e)(1), which provides for a deponent's right to request a review of the transcript. (App. Br. pp. 9-10). Yet the burden of requesting the transcript from the court reporter is on MacEachern, not the Companies or the Trial Court. Nothing prevented MacEachern from obtaining the transcript, as he was given access to numerous excerpts that detailed its contents and identified the court reporter. (RE 64, Page ID # 1627, Opp. to Objections). His failure to pursue his rights under Rule 30 is not the Trial Court's legal error.

## CONCLUSION

Based on the foregoing, Appellees Quicken Loans and Title Source request that this Court affirm the decisions of the U.S. District Court for the Eastern District of Michigan: (1) granting summary judgment to the Companies, (2) denying MacEachern's Discovery Motion, (3) granting in part the Companies' Discovery Motion, (4) entering the Protective Order, and (5) denying MacEachern's request for relief relating to the deposition transcript; and grant the Companies any other relief as this Honorable Court deems necessary and proper under the circumstances.

Respectfully submitted,

____*/s/ Kimberly A. Yourchock* _____

Tara E. Mahoney (P68697)
Kimberly A. Yourchock (P72336)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Appellees
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7442
kyourchock@honigman.com

Dated: June 19, 2017

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,569 words using the Microsoft Word program.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

DATED: June 19, 2017

*/s/ Kimberly A. Yourchock*
Kimberly A. Yourchock (P72336)
Honigman Miller Schwartz and Cohn LLP
Attorney for Appellees

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT that on this 19th day of June, 2017, Appellees Quicken Loans' and Title Source's Principal Brief and this Certificate of Service have been filed electronically with the Court and are being served on the following *pro se* Appellant via pre-paid, first-class U.S. Mail, at the address below:

Hugh MacEachern
22126 Hayes Street
Taylor, MI 48180

*/s/ Kimberly A. Yourchock*
Kimberly A. Yourchock (P72336)

**DESIGNATION OF ELECTRONICALLY FILED DISTRICT COURT DOCUMENTS**

Appellees Quicken Loans and Title Source hereby designate the following Trial Court documents referenced in their brief:

1. RE/ECF No. 1, Complaint, Page ID # 1-29

2. RE/ECF No. 18, Plaintiff's Motion to Compel Defendants to Provide Cost-Shifting, Page ID # 90-91.

3. RE/ECF No. 22, Plaintiff's Motion to Extend Time to Provide Discovery Requests to Defendants' Counsel, Page ID # 108-111.

4. RE/ECF No. 36, Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Page ID # 289-290.

5. RE/ECF No. 38, Plaintiff's Motion to Compel Discovery and for Sanctions, Page ID # 306-314.

6. RE/ECF No. 40, Defendants' Motion to Compel Discovery, Page ID # 319-322, 332.

7. RE/ECF No. 43, Defendants' Brief in Opposition to Plaintiff's Motion to Compel Discovery, Page ID # 441-451.

8. RE/ECF No. 43-3, Defendants' Brief, Ex. B, Defendants' Responses and Objections to Plaintiff's Discovery Requests, Page ID # 507-552.

9. RE/ECF No. 49, Defendants' Motion for Summary Judgment, Page ID # 615-648.

10. RE/ECF No. 49-2, Summary Judgment Motion Ex. 1, Jennifer Conte Decl., Page ID # 652-658, 660.

11. RE/ECF No. 49-3, Summary Judgment Motion Ex. 2, Yasmeen Jasey Decl., Page ID # 704-706.

12. RE/ECF No. 49-5, Summary Judgment Motion Ex. 3, Plaintiff's Deposition, Part 1, Page ID # 794-809, 812, 814-816, 836-839, 841-844

13. RE/ECF No. 49-7, Summary Judgment Motion Ex. 5, E-mail Chain, Page ID # 873-874.

14. RE/ECF No. 49-9, Summary Judgment Motion Ex. 7, Plaintiff's Deposition Part 2, Page ID # 886-891, 902-903, 907-915.

15. RE/ECF No. 49-10, Summary Judgment Motion Ex. 8, Diane Sakowski Decl., Page ID # 920-926.

16. RE/ECF No. 49-11, Summary Judgment Motion Ex. 9, Internal Complaint, Page ID # 1073.

17. RE/ECF No. 49-13, Summary Judgment Motion Ex. 11, Human Resources Investigation Notes, Page ID # 1083-1087.

18. RE/ECF No. 49-17, Summary Judgment Motion Ex. 15, Handwritten Notes, Page ID # 1101.

19. RE/ECF No. 49-18, Summary Judgment Motion Ex. 16, Summary Report, Page ID # 1103-1104.

20. RE/ECF No. 49-19, Summary Judgment Motion Ex. 17, E-mail Chain, Page ID # 1106.

21. RE/ECF No. 49-20, Summary Judgment Motion Ex. 18, E-mail List, Page ID # 1109-1128.

22. RE/ECF No. 49-21, Summary Judgment Motion Ex. 19, Sample E-mails, Page ID # 1130-1178.

23. RE/ECF No. 49-22, Summary Judgment Motion Ex. 20, Sample E-mails, Page ID # 1180-1197.

24. RE/ECF No. 49-23, Summary Judgment Motion Ex. 21, Termination Letter, Page ID # 1199.

25. RE/ECF No. 49-24, Summary Judgment Motion Ex. 22, March 25, 2014 E-mail Chain, Page ID # 1208.

26. RE/ECF No. 49-25, Summary Judgment Motion Ex. 23, September 22, 2014 E-mail, Page ID # 1211.

27. RE/ECF No. 51, Plaintiff's Brief in Opposition to Defendants' Motion to Compel Discovery, Page ID # 1250-52.

28. RE/ECF No. 57, Magistrate Judge's Order Denying Plaintiff's Motion to Compel and Entering Protective Order, Page ID # 1401-1404.

29. RE/ECF No. 58, Magistrate Judge's Order Granting in Part Defendants' Motion to Compel, Page ID # 1410.

30. RE/ECF No. 63, Plaintiff's Objections to Magistrate Judge's Discovery Rulings, Page ID # 1581-1582.

31. RE/ECF No. 64, Defendants' Opposition to Plaintiff's Objections to Magistrate Judge's Discovery Rulings, Page ID # 1627.

32. RE/ECF No. 68, Trial Court's Order Overruling Plaintiff's Objections to Magistrate Judge's Discovery Rulings, Page ID # 1679-1682.

33. RE/ECF No. 69, Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Page ID # 1708-1715, 1764, 1767.

34. RE/ECF No. 77, Order Granting Defendants' Motion for Summary Judgment, Page ID # 2539-2551.

35. RE/ECF No. 82, Order Denying Plaintiff's Motion for Reconsideration of Summary Judgment Order, Page ID # 2794-2798.

36. RE/ECF No. 84, Plaintiff's Notice of Appeal, Page ID # 2801.